```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

EARL FULGIAM,                    )
     Petitioner,                 )     CIVIL ACTION NO.
                                 )     18-12106-DPW
     v.                          )
                                 )
STEVEN KENNEWAY,                 )
     Respondent.                 )
                                 )
                                 )
```

MEMORANDUM AND ORDER
March 8, 2019

Petitioner Earl Fulgiam seeks habeas corpus relief from 2013 Massachusetts state court convictions for first degree murder, carrying a firearm without a license, carrying ammunition without a license, and possession of a large capacity firearm without a license. He is serving a life sentence without parole.

Mr. Fulgiam filed this federal habeas corpus petition on October 7, 2018. He argues that his right to confrontation under the Sixth Amendment to the United States Constitution was violated in two ways: (1) by admission of a ten-print fingerprint card containing his name, and (2) by certain testimony received from a fingerprint expert. The Respondent has moved for judgment on the pleadings.

## I. BACKGROUND

### A. *Factual Background*

When evaluating habeas corpus petitions made by state

prisoners pursuant to 28 U.S.C. § 2254, findings of fact by the state court "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Rashad* v. *Walsh*, 300 F.3d 27, 35 (1st Cir. 2002) (explaining that deference is accorded to findings of both state trial and state appellate courts). The parties do not appear to contest the factual findings reported by the Supreme Judicial Court of Massachusetts, s*ee generally Commonwealth* v. *Fulgiam*, 73 N.E.3d 798 (Mass. 2017). I rely upon the state court's pertinent findings here.

On July 25, 2011, the victims, Billie Marie Kee and Kevin Thomas, Jr., were robbed and killed in their Boston apartment. Ms. Kee was found lying down on the floor. She had suffered four gunshot wounds and multiple stab wounds that damaged her torso, lungs, ribs, and spine. Mr. Thomas was found dead in the front bedroom with his legs bound with a black cord. He had suffered seven gunshot wounds and four stabs wounds that damaged his torso and neck.

The police found a curling iron with its cord cut near Ms. Kee's body. The curling iron cord matched the wire that was used to bind Mr. Thomas' legs. The police also found a loaded nine-millimeter semiautomatic pistol with a magazine. All bullets, bullet fragments, and shell casings recovered from the

scene had been fired from the nine-millimeter semiautomatic pistol. The police later individualized[1] a latent print found on the curling iron to co-defendant Michael T. Corbin, and four latent prints from the nine-millimeter semiautomatic pistol to Mr. Fulgiam.

B.  *Procedural History*

Mr. Fulgiam and Mr. Corbin were tried by a jury in the Suffolk County Superior Court from May 1 to May 20, 2013. At trial, Kristen Tolan, a fingerprint examiner from the Boston Police Department, testified that seven latent prints were recovered from the nine-millimeter semiautomatic pistol. She further testified that after she entered the first latent print into the Automated Fingerprint Identification System ("AFIS system"), the system generated a ten-print card[2] for Earl Fulgiam. The ten-print card contained Mr. Fulgiam's name, date of birth, sex, race, place of birth, height, weight, eye color, and hair color. It did not, however, include the date, the name of an arresting officer, the signature of the officer taking the

---

[1] Individualization is "when a latent print examiner comes to a conclusion that there is a sufficient amount of detail of quality and quantity … between the latent print and the known fingerprint … to establish that the latent print originated from the known print …." *Commonwealth* v. *Fulgiam*, 73 N.Ed.3d 798, 815 n.20 (Mass. 2017).

[2] A ten-print card records fingerprints of the ten fingers of an individual. A ten-print card generally also contains what purports to be that individual's name, signature, date of birth and sometimes an address.

3

prints, the signature of the person being fingerprinted, or the name of the Department.  The card did contain an arrest date of "07 18 2011," seven days before the date of the murder.  Ms. Tolan testified that using the ACE-V methodology (analysis, comparison, evaluation, and verification), she was able to individualize four latent prints from the semiautomatic pistol to Mr. Fulgiam.

Mr. Fulgiam sought to exclude the ten-print card and objected at trial, stating that it was "hearsay … being offered specifically for a testimonial purpose."  The trial court denied the motion because it was "of the view that the AFIS ten-print fingerprint card [was] not testimonial."

In addition to his objection to the ten-print card, Mr. Fulgiam also objected when the prosecutor asked Ms. Tolan, "Without getting into the name, was your work with respect to [the four individualized prints] verified after you came to your conclusions?"  The trial judge sustained the objection as to the word "verified," stating, however, that the prosecutor could "get into the name," but couldn't elicit "anything other than what he might have done when he examined them."  The prosecutor then asked Ms. Tolan if her findings had been "reviewed" by Ioan Truta, a criminalist in the Latent Print Unit, to which she replied "yes."  Although Mr. Fulgiam again objected, the trial court overruled the objection.

On May 20, 2013, the jury convicted Mr. Fulgiam and Mr. Corbin guilty as joint venturers in first degree murder.  The jury also convicted Mr. Fulgiam and Mr. Corbin of carrying a firearm without a license, possession of a large capacity firearm without a license, and carrying ammunition without a license.

Mr. Fulgiam and Mr. Corbin appealed to the SJC.  As pertinent here, Mr. Fulgiam argued to the SJC that the trial court erred in the admission of (1) the ten-print card without proper authentication or reliability; and (2) expert testimony related to the fingerprint analysis.  On May 5, 2017, the SJC upheld the convictions.  Mr. Fulgiam subsequently filed a petition for rehearing.  On June 28, 2017, the SJC denied the petition but amended its decision.  Mr. Fulgiam then sought — but on October 10, 2017, was denied — a writ of certiorari from the Supreme Court of the United States.  On October 7, 2018, Mr. Fulgiam filed this petition for a writ of habeas corpus from this Court pursuant to 28 U.S.C. § 2254, on the grounds that his Sixth Amendment right to confront witnesses was violated by the admissions of (1) the ten-print card bearing his name and (2) Ms. Tolan's testimony relating to Mr. Truta.

## II. STANDARD OF REVIEW

A state petitioner seeking federal habeas corpus relief under the Antiterrorism and Effective Death Penalty Act of 1996

(the "AEDPA"), must overcome a demanding burden.  *Cooper* v. *Bergeron*, 778 F.3d 294, 299 (1st Cir. 2015).  A federal court may not grant an application for a writ of habeas corpus unless the state court decision was (1) "contrary to, or an unreasonable application of clearly established" federal law, as determined by the Supreme Court, or (2) "based on an unreasonable determination of the facts in light of the evidence" presented during the state court proceeding.  28 U.S.C. § 2254(d).

In this context, "clearly established" federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Lockyer* v. *Andrade,* 538 U.S. 63, 71 (2003).  To secure habeas relief on the basis of an "unreasonable application of" Supreme Court precedent, the state-court decision must not merely be based on an "erroneous" or "incorrect" legal interpretation.  *Id.* at 75.  Rather, it must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington* v. *Richter*, 562 U.S. 86, 103 (2011). Additionally, "evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more

leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101.

Finally, even if a state court decision is contrary to, or an unreasonable application of, established federal law, a petitioner is not entitled to habeas relief unless harm resulted. The standard for determining whether relief must be granted is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Fry* v. *Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht* v. *Abrahamson*, 507 U.S. 619, 631 (1993)).

## III. DISCUSSION

Mr. Fulgiam's claims turn on alleged violation of the Sixth Amendment to the United States Constitution.[3]

The Sixth Amendment's Confrontation Clause, which is binding on the states through the Fourteenth Amendment, *Pointer* v. *Texas*, 380 U.S. 400, 403 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right … to be

---

[3] I note that the Respondent contends Mr. Fulgiam "separately challenges the admission of the ten-print card on due process or fair trial grounds," without raising the argument in state courts. I do not address this point because Mr. Fulgiam himself maintains that he does not intend to raise a separate Fourteenth Amendment claim apart from the alleged Sixth Amendment violation. In his Opposition to Respondent's Motion for Judgment on the Pleadings, Mr. Fulgiam makes explicit that he does not present a separate due process argument. He explains that he included reference to the Fourteenth Amendment in his Petition because "the 6th Amendment's right to cross-examination is applicable to the states through the 14th amendment."

7

confronted with the witnesses against him." U.S. Const. amend. VI; *see generally Ohio* v. *Clark*, 135 S. Ct. 2173, 2179 (2015). The Clause enables a criminal defendant to bar out-of-court statements that are "testimonial" by witnesses who did not appear at trial unless the witnesses are unavailable to testify and the defendant had a prior opportunity to cross-examine them. *Crawford* v. *Washington*, 541 U.S. 36, 53-54 (2004).

In *Crawford*, the Supreme Court defined a "core class" of testimonial statements as those "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52. The Supreme Court has further explained that statements are testimonial when the circumstances objectively indicate that the primary purpose is "to establish or prove past events potentially relevant to later criminal prosecution." *Davis* v. *Washington,* 547 U.S. 813, 822 (2006). The First Circuit has synthesized the core concern of this Supreme Court case law as whether an objectively reasonable declarant could have anticipated the statement would be used at trial. *See United States* v. *Meises*, 645 F.3d 5, 20 (1st Cir. 2011).

It bears emphasizing that the Confrontation Clause does not depend on the law of evidence. *See Crawford*, 124 S. Ct. at 1370 (stating that the Framers did not intend to leave the Sixth

8

Amendment protection "to the vagaries of the rules of evidence"). While business records are generally not testimonial in this sense, if they are created with a later prosecution in mind, they may be treated as testimonial. *See United States* v. *Cameron*, 699 F.3d 621, 643-44 (1st Cir. 2012) (holding although the receipts of Yahoo!'s child pornography report containing information related to the "suspects" were kept in the ordinary course of business, they were testimonial because they were clearly created in anticipation of later trials).

### A.  *Ground one: The ten-print card*

Mr. Fulgiam first argues that because the ten-print card bearing his name contained testimonial hearsay he was unable to confront at trial, he was denied his Sixth Amendment right to confront witnesses.

Mr. Fulgiam contends that the SJC unreasonably applied Supreme Court Confrontation Clause law when it concluded the ten-print card was a non-testimonial business record. Mr. Fulgiam spends much time arguing the identifying information in the ten-print card should not fall within the business records exception. This state law evidence issue is not directly on-point in Confrontation Clause analysis. Although the SJC did conclude ten-print cards were business records, that court correctly stated that "[i]t is the testimonial character of any

9

item of evidence that triggers the confrontation right." *Fulgiam*, 73 N.E.3d at 819 (quoting *Commonwealth* v. *Siny Van Tran*, 460 Mass. 535, 552 (2011)). The SJC observed that business records are usually admissible without confrontation "not because they qualify under an exception to the hearsay rules, but because——having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial——they are not testimonial." *Id.* (quoting *Melendez-Diaz* v. *Massachusetts,* 557 U.S. 305, 324 (2009)). In reaching its conclusion that admission of the ten-print card did not violate Mr. Fulgiam's confrontation rights, the SJC implicitly noted the overlap between the basis for the business records exception and its generally non-testimonial characterization of ten-print cards: "[f]ingerprint records are nontestimonial because they are created for the 'administration of an entity's affairs' rather than to establish or prove some fact at trial." *Id.* (quotation marks in original) (citation omitted).

I now turn to the essential issue: whether the SJC's decision that the ten-print card was non-testimonial was an unreasonable application of clearly established federal law.

Mr. Fulgiam argues the SJC unreasonably applied Supreme Court law. He contends that Supreme Court case law provides clarity as to whether ten-print cards are testimonial. He

specifically points to *Melendez-Diaz* and *Crawford*. *Melendez-Diaz* concerned drug analysis certificates showing that evidence connected to the defendant was cocaine. *Melendez-Diaz*, 557 U.S. at 305. *Crawford* involved a recorded statement the defendant's wife had made during police interrogation, after the defendant had been arrested. *Crawford*, 541 U.S. at 38. In both cases, the Supreme Court held the statements involved were testimonial.

A ten-print card created prior to the crime at issue is not comparable to testimonial statements in *Melendez-Diaz* and *Crawford*. First, in both *Melendez-Diaz* and *Crawford*, the statements were developed after the arrest for the offense at issue and with a specific view to providing evidence as to that offense. The drug test certificates in *Melendez-Diaz* were created to determine the nature of the controlled substance, in order to prove the defendant's charge of distributing cocaine. The wife's statement in *Crawford* was taken to support the prosecution's allegation after the defendant's arrest. Here, the ten-print card was created seven days before the murder for inclusion in the library of the AFIS, and therefore could not have been generated for the purpose for proving some fact related to the subsequent murder at issue before me.

Additionally, unlike a witness's testimony about the crime or a drug test certificate, a fingerprint card itself cannot implicate a defendant without analysis. *See Maryland* v. *King*,

11

569 U.S. 435, 451 (2013)(analogizing DNA profiles to fingerprints, stating "[l]ike a fingerprint, [DNA profiles] are not themselves evidence of any particular crime, in the way that a drug test can by itself be evidence of illegal narcotic use"). The ten-print card, therefore, is not comparable to the testimonial statements in *Melendez-Diaz* and *Crawford*.

The fact there are no on-point Supreme Court cases that clearly establish ten-print cards as testimonial might be a sufficient answer to Mr. Fulgiam's claim. The absence of such Supreme Court cases on point implicitly speaks at a minimum to the absence of clearly established contrary Supreme Court rulings at the time the SJC decided Mr. Fulgiam's case. It bears noting in addition that courts from other circuits have reached the same conclusion as the SJC. This consistent lower court case law underscores the reasonableness of the SJC's application of the Supreme Court's Confrontation Clause case law. *See*, *e.g.*, *United States* v. *Williams*, 720 F.3d 674, 698 (8th Cir, 2013) (stating fingerprint cards created as part of a routine booking procedure from prior incident, and not in anticipation of present litigation, were not testimonial under *Crawford*); *United States* v. *Dale*, 494 F. App'x 317, 317 (4th Cir. 2012) (per curiam) (holding fingerprint cards were not testimonial because they "serve[d] no prosecutorial function on their own and [did] not (without additional testimony and

12

analysis) implicate defendant in criminal activity"); *United States* v. *Diaz-Lopez*, 403 F. App'x 199, 202 (9th Cir. 2010) (holding a fingerprint card "contain[ed] only ministerial, objective observations," and was not created in anticipation of litigation and therefore not testimonial).

Under the extraordinarily deferential standards of the AEDPA, federal habeas relief only "provides a remedy for instances in which a state court unreasonably *applies* [the Supreme] Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *White* v. *Woodall,* 572 U.S. 415, 426 (2014) (emphasis in original).

The SJC here carefully examined the record and applied the Supreme Court's Confrontation Clause precedents. Specifically, the SJC carefully analyzed on the basis of *Crawford* and *Melendez-Diaz*. Considering (1) the lack of more precise Supreme Court precedent on the particular issue, and (2) the consistent decisions from other lower courts, I find the SJC's determination that admission of the ten-print card did not violate Mr. Fulgiam's Sixth Amendment not unreasonable.

B. ***Ground two: Ms. Tolan's testimony regarding Mr. Truta***

In Mr. Fulgiam's Petition for a Writ of Habeas Corpus, he generally identifies as a second ground for relief violation of his Sixth Amendment right to confrontation on the basis that

"testimonial hearsay [was] admitted when fingerprint expert said someone verified her work but that person did not testify." Yet nowhere does Mr. Fulgiam argue or even separately mention this second ground in either his Memorandum in support of his Petition or in his Opposition to Respondent's Motion for Judgment on the Pleadings. Instead, Mr. Fulgiam's arguments focus exclusively on the first ground. I nevertheless discuss this second ground barely raised by Mr. Fulgiam, and for the reasons set forth below, I find this second ground separately unavailing.

Mr. Fulgiam claims the trial court erred in allowing the fingerprint expert Ms. Tolan to testify that another non-testifying fingerprint analyst Mr. Truta "verified her work." The SJC, however, found that "the judge allowed the analyst's testimony that the other analyst 'reviewed' her work, but did not allow testimony that the second analyst <u>verified</u> her work." *Fulgiam,* 73 N.E.3d at 821 (emphasis in original). Specifically, the SJC noted that:

> During the analyst's testimony, counsel for Fulgiam preemptively objected to any questioning by the Commonwealth regarding whether the analyst's findings were verified by another fingerprint examiner. While the judge sustained the objection, the judge indicated that the witness would be allowed to testify that another fingerprint analyst reviewed her work.

[*Id.* at n.27].

14

The SJC's report of facts is consistent with the trial record. Mr. Fulgiam has failed to present any factual basis to support his conclusorily asserted claim. Consequently, Mr. Fulgiam's second ground that "testimonial hearsay admitted when fingerprint expert said someone verified her work" is factually baseless. Only Ms. Tolan's testimony that Mr. Truta performed an act——a review of her work——was admitted. Because Ms. Tolan did not testify to any conclusions that Mr. Truta had reached, she did not introduce any testimonial hearsay from Mr. Truta. Thus, the Confrontation Clause was not directly implicated and the SJC did not act unreasonably in permitting Ms. Tolan's testimony to stand.

### IV. CONCLUSION

For the reasons set forth above, I GRANT the Respondent's Motion for Judgment on the Pleadings with respect to Mr. Fulgiam's habeas corpus petition. The Clerk is directed to enter a judgment of dismissal of this matter.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE